Exhibit 2_Rent_Own_Husband_Lynn

# Exhibit 2

# Rent to Own Agreement

This Rent to Own Agreement (this "Lease") is made effective as of November 01, 2019 ("Effective Date"), by and between David R Lynn ("Landlord"), and Dr. Frank E Gainer ("Tenant"). The parties agree as follows:

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant 4 bedroom, 1 1/2 bath brick rancher, with a full basement, "as is".

If tenant starts a home based business on the property, Tenant agrees to comply with all local laws and pay all fees, taxes, etc. and be responsible for passing a inspections required to operate said business. Tenant agrees to carry an umbrella insurance plan, with the tenant listed as one of the benefactors, in the event that said business is the cause for any lawsuit against Tenant and property, or any damage occurs to the house, property or anyone visiting the property.

Tenant agrees to hold the Landlord harmless in the event of any legal problems that may arise from the Tenant's home based business.

Tenant may sub- lease the basement apartment with written permission from the Landlord.

The Landlord requires his approval of the lease for any sub-tenant and needs to be provided a copy of the application at least 2 weeks before date of sub- lease. Application must provide Name, phone, social security number, DOB, current address, reference of family member not living with them. They must also carry renters insurance and abide by the same rules as the Master tenant.

This property will be kept smoke, drug and pet free.

Tenant agrees to put the electric bill in his name before move in, & ensure that the power is not cut off and pipes are not frozen in inclement weather.

If Landlord is forced to pay the electric bill in order to protect the house or the service, it is considered a
contract violation.

Tenant agrees that nothing will be moved into the house until the County has inspected and passed the property, and all required rents and deposits have been paid.

Tenant agrees that the Landlord can inspect the property for condition and safety reasons as needed, and can enter the property anytime without notice in the event of an emergency situation. ( Fire, pipes bursting, natural disaster, death of Tenant, etc).

Any violation of this contract may render the Option to Purchase terminated, and all payments forfeited. (the "Premises") located at 10491 Columbia Rd, Columbia, Maryland 21044.

**TERM.** The lease term will begin on November 01, 2019 and will terminate on October 31, 2020. If the Purchaser fails to exercise the option by such time and date, the option will automatically terminate and the Seller will be entitled to retain the non refundable consideration stated below.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly installments of $4,000.00 per month, payable in advance on the first (1st) day of each month. Lease payments shall be made to Landlord at 10605 State Route 108, Columbia, Maryland 21044, which location may be changed, in writing by Landlord, with a minimum of seven (7) days advanced notice to Tenant.

**SECURITY DEPOSIT AMOUNT.** At the time of the signing of this Lease, Tenant shall pay to Landlord, in trust, a security deposit of $4,000.00. Tenant has the right to receive from Landlord a written list of all existing damages if Tenant makes a written request within fifteen (15) days of Tenant's occupancy.

    The deposit shall be applied as follows:

    Security Deposit: $4,000.00 to be held and disbursed for Tenant damages to the Premises or other defaults under this Agreement, if any, as provided by law.

**POSSESSION.** Tenant shall be entitled to possession on the first (1st) day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good condition as when delivered to Tenant, ordinary wear and tear excepted.

**USE OF PREMISES/ABSENCES.** Tenant shall occupy and use the Premises as a dwelling unit. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first (1st) day of the extended absence.

**PETS.** No pets shall be allowed on the Premises.

**PROPERTY INSURANCE.** Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant shall be required to maintain renter's insurance of not less than $500,000.00.

**DAMAGE CAUSED BY TENANT.** If any damage to the property shall be caused by their act or neglect, the Tenant shall forthwith repair such damage at their own expense, including damage to screens and windows where same is not covered by Landlord's insurance.

**MAINTENANCE.** Landlord shall have the responsibility to maintain the Premises in good repair

at all times and perform all repairs necessary to satisfy any implied warranty of habitability except that Tenant shall be responsible for: Cutting grass, snow removal, maintaining shrubs and bushes, trash removal.

Tenant agrees to keep property free and clear of trash, junk, cars not licenses or tagged, etc.

Tenant agrees to keep the house clean and free and clear of trash, junk, clutter, rodents and bugs.

Tenant agrees that the house in not to be used for storage purposes.

Tenant will notify the Landlord immediately in the event of water leaks, roof leaks, fire or any other damage to the property that needs immediate attention.

Tenant will keep walls free of holes or damage and agree to not paint
the brick fireplace or brick exterior without specific written permission from Landlord.

Tenant agrees to keep the property address clearly marked at the driveway and at the mailbox, for use by emergency vehicles.

Tenant will not permit any squatters to live on the property and will not sub-lease without written permission from Landlord. Tenant must notify Landlord within twenty-four (24) hours of any condition requiring maintenance.

**UTILITIES AND SERVICES.** Tenant shall be responsible for all utilities and services in connection with the Premises for the term of this Lease.

**TAXES.** Landlord shall pay all real estate taxes which may be levied against the Premises.

**DESTRUCTION OR CONDEMNATION OF PREMISES.** If the Premises are damaged or destroyed by fire or other casualty to the extent that enjoyment of the dwelling unit is substantially impaired, Landlord, in its sole discretion may elect to repair the Premises or terminate the Lease upon thirty (30) days' written notice to Tenant. If the Premises are condemned or cannot be repaired, this Lease will terminate upon twenty (20) days' written notice by either party.

**HABITABILITY.** Tenant, or an authorized agent on Tenant's behalf, has inspected the Premises and fixtures and acknowledges that the Premises are in a reasonable and acceptable condition of habitability for their intended use, and the agreed lease payments are fair and reasonable. If the condition changes so that, in Tenant's opinion, the habitability and rental value of the Premises are adversely affected, Tenant shall promptly provide reasonable notice to Landlord.

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provision of law to the contrary, if Tenant fails to cure any financial obligation within 5 days (or any other obligation within 5 days) after written notice of such default is provided by Landlord to Tenant, Landlord may elect to cure such default and the cost of such action shall be added to Tenant's financial obligations under this

Page 25 of 325

Exhibit 2_Rent_Own_Husband_Lynn 3

This is a RocketLawyer.com document.    Page 3 of 1

Lease.

**LATE PAYMENTS.** For any payment that is not paid within 5 days after its due date, Tenant shall pay a late fee of $400.00, or as otherwise provided by applicable law.

**HOLDOVER.** If Tenant maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to 150% of the most recent rate preceding the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged the maximum amount allowable under applicable law for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling, at Tenant's expense, that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises, at Tenant's expense, that appropriately facilitate its use for such purposes. Such construction shall be undertaken and such fixtures may be erected only with the prior written consent of Landlord, which shall not be unreasonably withheld. At the end of the lease term, Tenant shall be entitled to remove, or at the request of Landlord, shall remove such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent, which shall not be unreasonably withheld, Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, tenants or workers. However, Landlord does not assume any liability for the care or supervision of the Premises. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

**MECHANICS LIENS.** Neither Tenant nor anyone claiming through the Tenant shall have the right to file mechanics liens or any other kind of lien on the Premises and the filing of this Lease constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens will not be valid, and (2) take whatever additional steps that are necessary in order to keep the premises free of all liens resulting from construction done by or for the Tenant.

Page 26 of 325

Exhibit 2_Rent_Own_Husband_Lynn 4

This is a RocketLawyer.com document.                                    Page 4 of 1

**SUBORDINATION OF LEASE.** This Lease is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Premises.

**OPTION TO PURCHASE.** Tenant, upon satisfactory performance of this Lease, shall have the option to purchase the real property described herein for a purchase price of $650,000.00, provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement. Thereafter, each of the parties shall promptly execute any and all further instructions or other documents including a Sale Agreement which may be reasonably required for purchase of the real property.

**TITLE.** Landlord agrees to deliver, and Tenant agrees to accept, title to the Premises subject only to (a) a lien for taxes and assessments levied against the Premises, (b) any covenants, conditions, restrictions, easements, right, rights-of-way of record, and (c) such other exceptions as Landlord and Tenant approve in writing. Landlord shall deliver to Tenant a preliminary title report within thirty (30) days after Tenant's exercise of the option.

**NOTICE REQUIRED TO EXERCISE OPTION.** To exercise the Option to Purchase, the Tenant must deliver to the Landlord, a written notice of Tenants intent to purchase, not less than 60 days prior to the expiration of the Lease Term. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement.

**OPTION CONSIDERATION.** Nonrefundable option consideration in the amount of $20,000.00 paid by the Tenant as consideration for this Option to Purchase Agreement, shall be credited to the purchase price at closing if the Tenant timely exercises the option to purchase. If the Tenant doesn't exercise the option to purchase, the Tenant shall forfeit the nonrefundable option consideration.

**EXCLUSIVITY OF OPTION**. This Option to Purchase Agreement is exclusive and non-assignable and exists solely for the benefit of the named parties above. Should Tenant attempt to assign, convey, delegate, or transfer this option to purchase without the Landlords express written permission, any such attempt shall be deemed null and void.

**CLOSING AND SETTLEMENT**. Tenant agrees that closing costs in their entirety, including any points, fees, and other charges required by the third-party lender, shall be the sole responsibility of Tenant. The only expense related to closing costs apportioned to Landlord shall be the pro-rated share of the property taxes due at the time of closing, for which Landlord is solely responsible.

**FINANCING DISCLAIMER.** THE PARTIES ACKNOWLEDGE THAT IT IS IMPOSSIBLE TO PREDICT THE AVAILABILITY OF OBTAINING FINANCING TOWARDS THE PURCHASE OF THIS PROPERTY. OBTAINING FINANCING SHALL NOT BE HELD AS A CONDITION OF PERFORMANCE OF THIS OPTION TO PURCHASE AGREEMENT. THE PARTIES FURTHER AGREE THAT THIS OPTION TO PURCHASE AGREEMENT IS NOT ENTERED INTO IN RELIANCE UPON ANY

Page 27 of 325                    Exhibit 2_Rent_Own_Husband_Lynn 5

This is a RocketLawyer.com document.                                        Page 5 of 1

REPRESENTATION OR WARRANTY MADE BY EITHER PARTY.

**REMEDIES UPON DEFAULT.** If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord in accordance with Maryland law, Landlord may terminate this Option to Purchase by giving written notice of the termination. If terminated, the Tenant shall lose entitlement to any refund of rent or option consideration. For this Option to Purchase Agreement to be enforceable and effective, the Tenant must comply with all terms and conditions of the Lease Agreement.

**RECORDATION.** This Lease shall not be recorded, but Landlord and Tenant shall execute, acknowledge, and deliver to each other a Memorandum of Option to Purchase in recordable form which is thereafter to be filed for record. Such memorandum shall be in compliance with the statutory requirements of Maryland Real Property Article §3-101.

**ACKNOWLEDGMENTS.** The parties are executing this Option to Purchase Agreement voluntarily and without any duress or undue influence. The parties have carefully read this Option to Purchase Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy.

**ASSIGNABILITY/SUBLETTING.** Tenant may not assign or sublease any interest in the Premises, nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld.

**NOTICE.** Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed to the party at the appropriate address set forth below. Such addresses may be changed from time to time by either party by providing notice as set forth below. Notices mailed in accordance with these provisions shall be deemed received on the third day after posting.

### LANDLORD:

David R Lynn
10605 State Route 108
Columbia, Maryland 21044

### TENANT:

Dr. Frank E Gainer

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of Maryland.

**ENTIRE AGREEMENT/AMENDMENT.** This Lease contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether

oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by both parties.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**TENANT:**

_____

Dr. Frank E Gainer

**LANDLORD:**

_____

David R Lynn

# REAL ESTATE LEASE
# INSPECTION CHECKLIST

Tenant has inspected the Premises and states that the Premises are in satisfactory condition, free of defects, except as noted below:

|  | SATISFACTORY | COMMENTS |
|---|---|---|
| Bathrooms | _____ | _____ |
| Carpeting | _____ | _____ |
| Ceilings | _____ | _____ |
| Closets | _____ | _____ |
| Dishwasher | _____ | _____ |
| Disposal | _____ | _____ |
| Doors | _____ | _____ |
| Fireplace | _____ | _____ |
| Lights | _____ | _____ |
| Locks | _____ | _____ |
| Refrigerator | _____ | _____ |
| Screens | _____ | _____ |
| Stove | _____ | _____ |
| Walls | _____ | _____ |
| Windows | _____ | _____ |
| Window coverings | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

_____
Date

**Tenant:**

_____
Dr. Frank E Gainer

**Acknowledged by Landlord:**

_____

David R Lynn

Page 31 of 325        Exhibit 2_Rent_Own_Husband_Lynn 9

This is a RocketLawyer.com document.        Page 9 of 1

# REAL ESTATE LEASE
## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT OR LEAD-BASED PAINT HAZARDS

Lead Warning Statement

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on poisoning prevention.

Landlord's Disclosure

(a) Presence of lead-based paint and/or lead-based paint hazards (Check (i) or (ii) below):
  (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain): _____

  (ii) __X__ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the landlord (Check (i) or (ii) below):
  (i) _____ Landlord has provided the tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents): _____

  (ii) __X__ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Tenant's Acknowledgment (initial)

(c) _____ Tenant has received copies of all information listed above.

(d) _____ Tenant has received the pamphlet Protect Your Family From Lead In Your Home.

Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

_____    _____
David R Lynn                      Date